# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CONSULTUS, LLC, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. 19-00821-CV-W-FJG |
| CPC COMMODITIES, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ORDER

Pending before the Court is Plaintiffs Consultus LLC's and CPC Commodities's request[1] for an order compelling production of "Defendants' privilege log materials per crime fraud exception and CPC emails." (Doc. #204 at 1.)

### I. Background

On January 29, 2021, Consultus, LLC ("Consultus") and Commoditrade, LLC d/b/a Sprout Solutions ("Sprout"), filed a First Amended Complaint against CPC Commodities ("CPC") and ISTT, Inc. ("ISTT"), seeking injunctive relief, and alleging computer tampering, misappropriation of trade secrets, tortious interference with contract and business expectancy, breach of contract (against CPC only), negligence, unjust enrichment, fraudulent inducement (against CPC only), copyright infringement, and unfair competition. (Doc. #100 at 6–16.) On February 12, 2021, Defendant CPC restated their counterclaims against Consultus and Sprout alleging breach of contract, breach of implied duty of good faith and fair dealing, tortious interference with contract, and tortious interference with business expectancy. (Doc. #101 at 41–44.)

---

[1] The Court will treat this request as a motion pursuant to Rule 37(1) and finds that the Plaintiffs have provided the required certification.

Consultus, which "provides software consulting related to commodity trading and commercial milling[,]" and Sprout, which "provides software services and information technology" to the same industries, are owned by Gretchen Henry and Jim Taylor. (Doc. #100 at 1, ¶¶ 1–3.) Consultus alleges that it developed, created, and owns a "platformed called Application Security Administration ("ASA")", which "is a foundational product upon which other software may be rapidly developed." (Doc. #100 at 2, ¶¶ 8, 10.) Sprout Solutions alleges that it owns CommodiTrade and Milling Station (the Commoditrade Software) and created and developed CommodiTrade and ASA with Consultus, or the owners of the companies. (Doc. #100 at 2, ¶¶9–10.) Consultus and Sprout Solutions claim that in January of 2015, CPC, which "operates a feedmill and provides commodity and nutrition services to third parties[,]" entered into an oral agreement with Consultus "for limited access to and supporting IT services for the CommodiTrade [S]oftware and other IT and related consulting services in exchange for fees." (Doc. #100 at 3, ¶¶ 4, 16.) CPC, however, asserts that they began working with Gretchen Henry in approximately 2006, when Ms. Henry was hired to develop a "web-based application that would allow CPC to track purchases and sales commissions." (Doc. #101 at 36, ¶¶8–9.) CPC alleges that Ms. Henry founded Consultus and Sprout in approximately 2015 and began offering "her services to CPC under the umbrella of those entities." (Doc. #101 at 36, ¶10.) CPC asserts that the "CommodiTrade Software was developed at CPC's request and was designed specifically for CPC's business." (Doc. #101 at 37, ¶14.) Ownership of both CommodiTrade Software and ASA security platform are in dispute. (Doc. #101 at 5, ¶21; Doc. #102 at 13, ¶15.) The relationship between Consultus, Sprout and CPC eventually soured, and CPC engaged ISTT, which provides IT consulting services, to provide the same services that Ms. Henry, Consultus, and Sprout provided to CPC. (Doc. #100 at 2, 3, 4 ¶¶ 5, 20, 23; Doc. #101 at 38, ¶¶ 25, 26.) Consultus and

Sprout allege that in December of 2018, "CPC, by and through ISTT, accessed Consultus and Sprout's servers without authorization." (Doc. #100 at 5, ¶ 40.) Then in "February 2019, CPC, by and through ISTT, accessed Consultus and Sprout's servers without Plaintiffs' knowledge or consent[,] . . . and downloaded proprietary files and databases owned by Consultus and Sprout from Plaintiffs' servers without Plaintiffs' authorization or knowledge." (Doc. #100 at 5, ¶¶ 41–42; see also Doc. #101 at 40, ¶36.)

## II.  Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P 26(b)(1). Rule 26 further states that a Court:

> must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if is determined that:
>
>    (i)  The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
>    (ii) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
>    (iii) The proposed discovery is outside the scope permitted by Rule 26(b)(1).

3

Fed. R. Civ. P. 26(b)(2)(C). The Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

The party seeking discovery must show how the discovery is relevant. *Nwinee v. St. Louis Developmental Disabilities Treatment Centers*, 2019 WL 2569927, at *1 (E.D. Mo. June 21, 2019). Upon a satisfactory showing of relevancy, the party resisting discovery must show that limitations on discovery are needed in light of Rule 26(b)(2)(C). "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court . . . ." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984) (internal citations omitted).

### III. Discussion

A. Correspondence Specified in CPC and ISTT's Privilege Logs

Plaintiffs argue that Defendants ISTT's and CPC's claims of privilege should be overruled due to the crime-fraud exception. Defendant ISTT withheld six electronic messages ("emails") all originating between February 14, 2019, to February 15, 2019, asserting that they are covered by the work product doctrine. (Doc. #204-1 at 3–4). Defendant CPC Commodities withheld eight emails originating from February 15, 2019, and February 19, 2019, and two emails from September 10, 2019. (Doc. #204-2 at 2.) Defendant CPC, on the other hand, asserts that the emails are covered by the attorney-client privilege. (Doc. #204-2 at 2.) There has been no argument that the emails are not covered by either the work product doctrine or the attorney-client privilege.

The attorney-client privilege serves to protect communication between an attorney and his or her client, but it is not absolute. *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2626 (1989). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' . . . between lawyer and client does not extend to communications 'made

4

for the purpose of getting advice for the commission of a fraud' or crime." *Id*. at 563 (internal citations omitted). The Eighth Circuit has held that the crime-fraud exception applies to the work product doctrine. *In re Green Grand Jury Proc.*, 492 F.3d 976, 980 (8th Cir. 2007).

In order to avail itself of the crime-fraud exception, the party seeking disclosure must make a threshold showing of "a factual basis adequate to support a good faith belief by a reasonable person that the [party asserting the privilege] was engaged in intentional fraud and communicated with counsel in furtherance of the fraud." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001) (internal quotations omitted). "Timing is critical, for the *prima facie* showing requires that the 'client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme.'" *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 (8th Cir. 1984) (internal citation omitted). If the party seeking disclosure is successful, then the court has discretion as to whether to engage in an *in camera* review of the documents, taking into account "the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Zolin*, 491 U.S. at 572.

It should be noted that while there is a potential choice of law issue, it need not be resolved as "the applicable state and federal principles are not materially different." *Pritchard-Keang Nam Corp.*, 751 F.2d at 281. The Court, however, notes that there is some discussion in Missouri as to whether the crime-fraud exception applies in civil cases. *Crow v. Crawford & Co.*, 259 S.W.3d 104, 122 (Mo. Ct. App. 2008) (citing *State ex rel. Peabody Coal Co. v. Clark*, 863 S.W.2d 604, 607 (Mo. 1993)). Nevertheless, Missouri, like federal law, requires a similar threshold showing:

> The crime-fraud exception requires that the party seeking discovery make a *prima facie* showing that the party asserting the privilege has committed a crime or fraud,

5

> and must also demonstrate that the privileged material has a direct and contemporaneous relationship to the crime or fraud. A bare allegation of fraud is not sufficient.

*Id.* (internal citations omitted). Therefore, under either Missouri or federal law, Plaintiff is not entitled to *in camera* review unless Plaintiff satisfies the threshold showing.

Plaintiffs point to various depositions which acknowledge that ISTT accessed Plaintiffs' leased servers using Gretchen Henry's credentials and downloaded software code and other material. (Doc. #204 at 5.) Plaintiffs also point to deposition testimony which supports their assertion that "CPC instructed ISTT to access Plaintiffs' servers and download the software and files at issue." (Doc. #204 at 5.) The Court notes that while Plaintiffs point to deposition testimony for the assertion that "ISTT altered files and data stored on Plaintiffs' servers and also deleted logs that recorded ISTT's conduct while on Plaintiffs' servers[,]" the deposition testimony does not fully support that assertion and/or is contradicted by later statements. (Doc. #204 at 5; Doc. #204-3 at 36:20–37:15, 200:5–201:6 (Plaintiffs' Exhibit #3); Doc. #204-4 at 106:25–107:16 (Plaintiff's Exhibit #4).) In support of their motion, Plaintiffs assert that based on this evidence, "[a]ny communications made by Defendants to counsel in an effort to hide their ongoing criminal activity is discoverable. Any communications with counsel in which the Defendants' continued use, receipt, storage, or disclosure of the data taken from Plaintiffs' servers was involved, advocated, or otherwise discussed is subject to the crime-fraud exception." (Doc. #204 at 8.) Defendants, however, assert, and cite to various pieces of evidence, that "CPC had authorization and/or reasonable grounds to believe it had authorization to access the Software because it either owns it or has an implied non-exclusive license to the Software." (Doc. #213 at 9.)

This Court finds that Plaintiffs' assertions do not satisfy *Zolin's* threshold showing, as they amount to mere conjecture. There is no other evidence that the communications were made in

6

furtherance of a crime or fraud. Like the plaintiff in *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559 (8th Cir. 1997), Plaintiffs "merely offered [their] general theory that a fraud occurred and asserted that any communications made aided that fraud, a showing that does not satisfy the requirements of the crime-fraud exception or justify in camera review." *Rabushka*, 122 F.3d at 566.

Plaintiffs point to an email from Megan Jones to David J. Mantlo that they argue "confirm[s] that Defendants' communications with counsel were in furtherance of maintaining software they knew was stolen[.]" (Doc. #204 at 8.) The email, however, is comprised of only three sentences and was clearly part of an ongoing discussion. The email itself is not very detailed and does not provide any information as to the specific subject. Furthermore, the email is dated a month after the bulk of the emails Plaintiffs are requesting. Therefore, this Court rejects Plaintiffs' suggestion that the Defendants waived the attorney-client privilege by disclosing it to a third party. *See State ex rel. Garrabrant v. Holden*, 633 S.W.3d 356, 360 (Mo. 2021) (finding that "[a]n individual can waive the attorney-client privilege by disclosing a privileged communication to a third party.")

Furthermore, there are fact issues that remain open as to whether Defendant CPC owned the software at issue. While this matter is a civil case, both parties point to Missouri's Computer Tampering Act as providing the elements needed to show that a crime or fraud was being undertaken. (Doc. #204 at 4, Doc. #213 at 6–7.) Per the statute, the computer tampering must be done "without authorization or without reasonable grounds to believe that he has such authorization[.]" Mo.Rev. Stat. § 569.095 (2017). The common law action for fraud also requires a specific intent to provide a false representation. *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985). Therefore, whether we are dealing with a crime or a fraud, the law requires that the

7

individual committing the crime or fraud must do so knowing that it was either unauthorized or untrue. Therefore, CPC's belief it owns the software in question negates the crime-fraud exception.

B. CPC Emails

Plaintiffs next seek to compel documents responsive to Plaintiffs' Third Request for Production of Documents to Defendant CPC Commodities. Specifically, Plaintiffs request:

> 43. All intra-CPC email communications (i.e. all emails from a CPC officer or employee that include a CPC employee or officer as a recipient) from August 1, 2018 through July 31, 2019.
>
> 44. All email communications between CPC (i.e. all emails from a CPC officer or employee that include a CPC employee or officer as a recipient) and any employee or representative of ISTT from August 1, 2018 through July 31, 2019, which were not previously produced in this action by CPC.

(Doc. #213-7 at 7.)

Regarding Request No. 44, CPC asserts that there is no dispute as the request "is duplicative of prior document requests served upon ISTT, and ISTT has already produced emails responsive to those prior requests." (Doc. #213 at 16.) In their reply brief, Plaintiffs do not refute this contention, nor do they argue that the production by ISTT is incomplete. Therefore, this Court will deem the argument abandoned. *See Tarvisium Holdings, LLC v. Dukat, LLC*, 2021 WL 5534688, at *2 (W.D. Mo. Mar. 22, 2021) (finding that a party's failure to respond to an argument results in a finding that the party has conceded the argument.)

With regard to Request No. 43, Defendants maintain that the request is over broad and seeks material that is not relevant to this matter. (Doc. #213 at 16.) The parties have conferred about this matter and have attempted to narrow the scope of the request, including providing search terms to narrow the volume of emails, but have been unable to come to an agreement. (Doc. #204 at 10; Doc. #213 at 16-17.) This Court agrees with the Defendant that the scope of Request No.

8

43 is "overly broad and seek[s] discovery of documents and information well-beyond the scope permitted by Rule 26(b)(1) as for both relevance and proportionality." *Mahaska Bottling Co., Inc. v. PepsiCo, Inc.*, 2018 WL 11344889, at *8 (S.D. Iowa Dec. 6, 2018).

Plaintiffs argue that they are "entitled to determine the volume of use and functionality of ISTT's version of the CommodiTrade [S]oftware after the taking[,] . . . and are entitled to see how the new software is being used day to day[.]" Plaintiffs should be able to designate search terms designed to address those matters. Therefore, Plaintiffs have seven days from the date of this order to provide search terms to Defendant CPC that will narrow the scope of the request. Upon receipt of the search terms, Defendant CPC shall review the terms and attempt to work out any differences with Plaintiffs. If, after five days of receipt of the search terms, the parties are unable to come to an agreement, the parties will immediately contact chambers. A hearing will then be conducted in order to determine the search terms to be utilized. Failure to adhere to this timeline by either party will result in a waiver of that party's position regarding Request No. 43. The Court declines Defendants' request to order Plaintiffs to pay for production as the Court has ordered that the request be narrowed.

IV. Conclusion

Based upon the foregoing, it is

ORDERED that the motion contained in Plaintiffs' Brief Regarding Requests for Defendant CPC's Emails & The Crime Fraud Exception (Doc. #204) is granted in part and denied in part, consistent with this Order.

          */s/ Lajuana M. Counts*
          LAJUANA M. COUNTS
          UNITED STATES MAGISTRATE JUDGE